STATE OF MICHIGAN
COURT OF APPEALS

PELLIE MAE NORTON-CANTRELL,

      Plaintiff-Appellant,

v

ANTHONY BZURA TRUST AGREEMENT,
under agreement dated March 11, 2011, by and
through successor trustee, GREGORY BZURA,

      Defendant-Appellee.

UNPUBLISHED
October 23, 2018

No. 339305
Wayne Probate Court
LC No. 2015-811336-CZ

Before: SHAPIRO, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Plaintiff was in a long-term relationship with Anthony Bzura (Tony) that lasted over 40 years, but the two never married. When Tony's health began to deteriorate, plaintiff became his caretaker. According to plaintiff, Tony always promised to "take care" of her, and indeed, plaintiff received assets from Tony totaling over $300,000 in the time leading up to and following his death in June 2015. However, plaintiff believed that Tony's promises involved a much greater sum, and in July 2015 she filed a claim against his trust for over $2,700,000. The trust disallowed the claim, and plaintiff brought suit in probate court seeking to recover against the trust under a variety of contract theories. The probate court determined that MCL 700.2514, which provides that a contract to make a will or devise must be in writing, barred plaintiff's claims. Accordingly, the probate court granted defendant summary disposition. The probate court also awarded defendant attorney fees as sanctions against plaintiff for bringing a frivolous claim. On appeal, plaintiff challenges both of those rulings.[1] We agree with the probate court

---

[1] We reject defendant's argument that we do not have jurisdiction over plaintiff's challenge to the probate court's decision to impose sanctions. Plaintiff filed a timely appeal from the probate court's May 25, 2017 order granting defendant summary disposition, which qualifies as a final order. MCR 7.202(6)(a)(*i*). And "[w]here a party has claimed an appeal from a final order, the party is free to raise on appeal issues related to other orders in the case." *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992). Clearly, we have jurisdiction to consider whether the trial court erred in deciding to impose sanctions. Defendant's reliance on

that defendant was entitled to summary disposition, but conclude that the probate court clearly erred in imposing sanctions. Therefore, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. BACKGROUND

In 1969, plaintiff and Tony met in Florida and began a relationship later that year.[2] Per Tony's request, she moved into a motel he owned and helped him manage it. Tony sold the motel in the early 1970s. Using funds from the sale, Tony began investing in stock. Plaintiff said that Tony told her that he was investing "for our future." Plaintiff added, "He told me if I would stick with him, that we would go places together." Plaintiff said that she and Tony were "in for the long haul" and that Tony was committed to taking care of her.

Also in the early 70s', Tony built a home in Fairview, Michigan, that he and plaintiff resided in part-time. Around 1980, Tony built a home in Florida, where he and plaintiff lived primarily until the property was sold in 2005.[3] They then lived full-time in the Fairview home.

In the following years, Tony's health began to deteriorate and, according to plaintiff, he relied on her, a former healthcare worker, to take "total care" of him. Plaintiff testified that she missed one of her son's funerals in 2013 so that she could continue caring for Tony. She explained that she did these things for Tony out of love, but not only love—she was "working" and she expected that Tony "would live up to his promises." Specifically, plaintiff said that toward the end of Tony's life, he wanted plaintiff to "take care" of him and in exchange he would take care of her and her "needs."

Tony executed various estate planning documents to provide for the disposition of his assets. In 2011, he executed "[t]he Anthony Bzura Trust Agreement" ("the trust"). The trust provided that upon Tony's death plaintiff would receive 1,000 shares of DTE stock and a life estate in the Fairview property.[4] Plaintiff did not learn of the trust's existence until 2013. Before then, she knew only what Tony had told her verbally, which was that she "would share in the balance of the estate . . . ." In June 2015, Tony passed away.[5] Plaintiff received the funds in four joint bank accounts that she held with Tony.

---

*John J Fannon Co v Fannon Products, LLC*, 269 Mich App 162, 165-167; 712 NW2d 731 (2015), is misplaced because in that case the order being appealed only granted sanctions.

[2] Because the probate court granted defendant summary disposition under MCR 2.116(C)(10), we view the evidence in a light most favorable to plaintiff and accept her uncontradicted deposition testimony as true. See *In re Miltenberger Estate*, 275 Mich App 47, 50; 737 NW2d 513 (2007).

[3] In 2003, after suffering a stroke, plaintiff moved to Texas to be closer to her children. Plaintiff said that Tony "begged me to come back to him," and she eventually returned to living with him.

[4] In 2013, the title to Fairview property was transferred to plaintiff's name.

[5] Plaintiff was not mentioned in Tony's will.

After Tony's death, plaintiff spoke to successor trustee Gregory Bzura, about Tony's condominium in Wyandotte. Plaintiff testified that Tony wanted her to have the condominium. She also testified that Tony told her that Gregory would take care of that. But Gregory, who was Tony's brother, told plaintiff that Tony wanted him "to have everything."

In July 2015, plaintiff presented a claim against the trust, seeking to recover compensation for three years of services rendered (calculated at over $700,000), and also $2,000,000 based on Tony's purported promise to take care of plaintiff so that she "may live comfortably for the rest of her life." Gregory disallowed plaintiff's claim.

In September 2015, plaintiff filed a multi-count complaint to recover on Tony's alleged promise to keep her financially secure for the rest of her life in exchange for her devotion and services. She alleged breach of express contract, breach of implied-in-fact contract, and promissory estoppel. She also sought compensation for her caregiver services under a theory of unjust enrichment.

In December 2016, defendant moved the probate court for summary disposition under MCR 2.116(C)(10) (no genuine issue of a material fact), arguing that MCL 700.2514 barred plaintiff's claims because there was no contract or writing evincing the alleged contract between plaintiff and Tony. Alternatively, defendant argued that Tony fulfilled any promise or contractual obligation to plaintiff through the "substantial assets" he had left to her. Additionally, defendant requested that the probate court impose sanctions against plaintiff for bringing a frivolous claim.

In response, plaintiff argued that MCL 700.2514 did not apply in this case because the contract between her and Tony did not constitute an agreement to make a will. Plaintiff also contended that MCL 700.2514 was inapplicable because it only governed contracts made after July 1979, and the agreement between her and defendant began in 1969 and "evolved thereafter." Setting aside the statute, plaintiff contended that an implied-in-fact contract existed between her and Tony and that the circumstances of their arrangement were sufficient to overcome the presumption that she rendered services gratuitously. Plaintiff asked the probate court to deny defendant's request for sanctions because it was based on a distortion of the record.

The parties agreed to waive oral argument and rely on their briefs. In May 2017, the probate court issued a written opinion and order granting defendant summary disposition. The court first determined that, based on her deposition testimony, plaintiff's claims pertained to services she rendered in the three years before defendant's death in 2015. Therefore, the probate court found that MCL 700.2514 applied because the purported contract was formed after 1979. The court also ruled that plaintiff failed to provide legal authority in support of her argument that MCL 700.2514 did not apply because she did not bargain for the making of a will. Similarly, the court also found that sanctions were appropriate because plaintiff "failed to present any credible legal basis to support her claim." The probate court denied plaintiff's motion to reconsider the imposition of sanctions, clarifying that it found that plaintiff's claims were frivolous. This appeal followed.

## II. DISCUSSION

We review de novo a probate court's grant or denial of summary disposition. *In re Casey Estate*, 306 Mich App 252, 256; 856 NW2d 556 (2014). Summary disposition under MCR 2.116(C)(10) is appropriate when, viewing the evidence in a light most favorable to the nonmoving party, there is not a genuine issue of a material fact. *In re Miltenberger Estate*, 275 Mich App 47, 50; 737 NW2d 513 (2007). "A trial court's findings with regard to whether a claim or defense was frivolous, and whether sanctions may be imposed, will not be disturbed unless it is clearly erroneous." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 533; 773 NW2d 57 (2009). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 253; 769 NW2d 234 (2009).

### A. MCL 700.2514

Plaintiff argues that MCL 700.2514 does not apply to her claims. We disagree.

Section 2514 of the Estates and Protected Individuals Code, MCL 700.1101 *et seq*., provides in part as follows:

> (1) If executed after July 1, 1979, a contract to make a will or devise, not to revoke a will or devise, or to die intestate may be established only by 1 or more of the following:
>
> (a) Provisions of a will stating material provisions of the contract.
>
> (b) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract.
>
> (c) A writing signed by the decedent evidencing the contract. [MCL 700.2514.]

A party seeking to enforce a contract to leave property under a will must "prove an actual express agreement and not a mere unexecuted intention." *In re Mckim Estate*, 238 Mich App 453, 456; 606 NW2d 30 (1999).

Plaintiff first argues that MCL 700.2514 does not apply because her contract with Tony began in 1969. Viewing the evidence in a light most favorable to plaintiff, it appears that she and Tony have always had an understanding that they would take care of each other and that Tony would help provide for her. However, plaintiff's claims relate to something more specific than that general commitment. She alleges that she provided caretaking services to Tony in exchange for his promise that she would be financially secure for the rest of her life. Therefore, we agree with the probate court that plaintiff's claims relate to services that she rendered to Tony toward the end of his life—long after 1979—and are governed by the statute. MCL 700.2514(1).

Next, plaintiff argues that MCL 700.2514 does not apply because she is not alleging that she and defendant contracted to make a will. Generally, to determine the nature of a complaint,

we look through a party's labels and read the claims as a whole. See e.g., *Altobelli v Hartmann*, 499 Mich 284, 300; 884 NW2d 537 (2016). Doing so in this case, it is clear that the relevant promises related to how Tony would distribute his estate. Plaintiff agreed that Tony took care of her until he died. It necessarily follows that what is at issue in this case is how Tony provided for her after his death. And an "oral agreement is properly characterized as an agreement to make a will or devise[] [when] the terms come due after the promisor's death." *In re Mckim Estate*, 238 Mich App at 458. Indeed, it is no coincidence that plaintiff's claim against the trust was filed shortly after she was rebuffed by Gregory following Tony's death. For those reasons, we conclude that plaintiff is essentially alleging that Tony agreed to leave her property through will or devise, and she cannot avoid MCL 700.2514 through artful pleading.

In sum, the probate court correctly concluded that MCL 700.2514 governed plaintiff's claims.[6] Because there is no writing evidencing Tony's agreement to provide plaintiff financial security for the rest of her life or to compensate her for caretaking services, the probate court correctly granted defendant summary disposition.

## B. SANCTIONS

Finally, plaintiff argues that the probate court clearly erred in assessing sanctions against her. We agree.

A court may assess costs and attorney fees against a party as a sanction for bringing a frivolous claim. MCR 2.114(F); MCR 2.625(A)(2); MCL 600.2591(1). A civil action is frivolous if any of the following conditions exist:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(a)(*i*)-(*iii*).]

"To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made." *In re Costs and Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002).

The probate court found that plaintiff's claims were frivolous because she did not provide any legal authority in support of her position that MCL 700.2514 did not apply in this case. But the phrase "legal merit" as used in MCL 600.2591 is not synonymous with "legal authority." In

---

[6] Although plaintiff sought recovery under theories of promissory estoppel and unjust enrichment, she does not pursue those claims on appeal. Therefore, we need not address whether MCL 700.2514 applies to those claims.

issues of first impression, for instance, there may not be caselaw to support a party's position. Arguments in those cases do not necessarily lack legal merit.

In this case, plaintiff argued that MCL 700.2514 did not apply because her agreement with Tony began in 1969, before the statute's cut-off date. She also argued that MCL 700.2514 did not apply because she and Tony did not contract to make a will. In other words, plaintiff's position was that the statute did not apply to the facts of this case. Although it would have been advantageous for plaintiff to support that position with analogous or supporting caselaw, we cannot conclude that her unsuccessful textual arguments based on the statute's language were devoid of legal merit. See *Kitchen v Kitchen*, 465 Mich 654, 663; 641 NW2d 245 (2002) ("Not every error in legal analysis constitutes a frivolous position."). Further, although the trial court did not address the merits of plaintiff's contract theories, we note that she provided the trial court with legal arguments and Michigan caselaw relating to the substance of her claims. For those reasons, we are left with a definite and firm conviction that the probate court made a mistake in assessing sanctions.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto
/s/ Michael F. Gadola