*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAY BEE KAY HOLDING COMPANY, LLC, and
KAY BEE KAY PROPERTIES, LLC,

        Plaintiffs/Counterdefendants/Third-
        Party-Defendants,

v

PNC BANK, NA,

        Defendant/Cross-plaintiff,

and

SAID TALEB,

        Defendant/Counterplaintiff/Third-
        Party-Plaintiff/Cross-Defendant-
        Appellant,

and

KEITH B. KRAMER,

        Third-Party-Defendant,

and

TURFE LAW, PLLC, and MILLER CANFIELD
PADDOCK AND STONE, PLC,

        Appellees.

UNPUBLISHED
August 20, 2020

No. 347193
Wayne Circuit Court
LC No. 12-006105-CZ

Before: REDFORD, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Defendant, Said Taleb, appeals as of right the trial court's December 20, 2018 order that Turfe Law, PLLC (Turfe Law) had an attorney charging lien in the amount of $196,965.20. Taleb also appeals the trial court's April 7, 2017 order[1] in which it ordered (1) that Turfe Law had an attorney lien, the amount of which would be determined at a later evidentiary hearing after the conclusion of Keith B. Kramer's pending bankruptcy proceedings, and (2) that the net proceeds from the Kramer bankruptcy matter awarded to Taleb as an unsecured creditor would be held in escrow by Miller, Canfield, Paddock, and Stone, PLC, (Miller Canfield) after it deducted its attorney fees for representing Taleb in the Kramer bankruptcy proceedings and in the trial court proceedings. Because Appellant's arguments are completely devoid of legal and factual merit or were completely and affirmatively waived by him before the trial court, we affirm.

I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Turfe Law sought an attorney charging lien related to its representation of Taleb in a lawsuit brought against Taleb by his former employer, Keith Kramer and his companies, Kay Bee Kay Holding Company, LLC, and Kay Bee Kay Properties, LLC. After representing himself for about 18 months, Taleb contacted Turfe Law for help. Turfe Law provided Taleb legal counsel and negotiated submitting the case to binding arbitration that resulted in dismissal of all claims against Taleb and the arbitrator's award of $793,333.33 to Taleb, which included $198,333.33 in attorney fees and costs. A dispute between Turfe Law and Taleb arose over the payment of attorney fees. Turfe Law asserted that Taleb agreed to a one-third contingency fee but later refused to sign a written agreement memorializing the fee agreement. The fee dispute resulted in Taleb and Turfe Law parting ways. Turfe Law moved to withdraw as counsel because of the breakdown in the attorney-client relationship and requested that the trial court acknowledge its attorney charging lien.

Taleb hired Miller Canfield to represent him in Kramer's and his companies' appeals of the trial court's April 3, 2015 order that confirmed the arbitration award and entered judgment in Taleb's favor. Miller Canfield also represented Taleb in Kramer's and his companies' bankruptcy proceedings that commenced on April 28, 2015. The filing of the bankruptcy case stayed Kramer's

---

[1] Turfe Law and Miller Canfield, contend that this Court lacks jurisdiction over Taleb's appeal of the April 7, 2017 order on the ground that an appeal of right expired long ago because it qualified as a final order under MCR 7.202(6)(a)(*iv*). The trial court, however, did not determine the amount of the attorney lien until entry of its December 20, 2018 order. In *John J Fannon Co v Fannon Products, LLC*, 269 Mich App 162, 165-167; 712 NW2d 731 (2005) this Court held that an order that granted sanctions was not a "final order" for purposes of filing a claim of appeal until the trial court determined the amount of attorney fees and costs. This case is analogous to *Fannon Co*. Appellees' arguments regarding jurisdiction are unavailing. See also *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992) ("Where a party has claimed an appeal from a final order, the party is free to raise on appeal issues related to other orders in the case.").

and his companies' appeals. This Court, therefore, administratively closed their appeals without prejudice.[2] The bankruptcy court terminated the stay respecting Kramer's appeal on December 15, 2015, and Taleb, by counsel, Miller Canfield, moved to reopen Kramer's appeal. This Court granted Taleb's motion.[3] This Court later affirmed the trial court's order confirming the arbitration award and judgment in Taleb's favor.[4]

The trial court conducted a hearing on December 16, 2016 at which it determined Turfe Law's entitlement to an attorney charging lien. Taleb represented himself and did not dispute Turfe Law's right to payment for its services, but he argued that the calculation of that amount should wait until the bankruptcy proceedings concluded. Miller Canfield represented its own interests and urged the trial court to ensure that Turfe Law did not get paid before Miller Canfield which had asserted an attorney charging lien in the Kramer bankruptcy proceedings. The trial court agreed, and included in its April 7, 2017 order that funds disbursed to Taleb in the bankruptcy proceedings would first be paid to Miller Canfield, then the net amount would be held in escrow by Miller Canfield until determination of Turfe Law's fees. The trial court ordered that Turfe Law had an attorney lien but the amount would be determined at the conclusion of Kramer's bankruptcy proceedings.

Turfe Law later moved in the trial court for an evidentiary hearing to settle the attorney fees dispute but Taleb objected on the ground that the bankruptcy stay had not been lifted and the bankruptcy proceedings remained pending. After adjourning the issue for several months, the trial court scheduled the evidentiary hearing for December 11, 2018. Taleb filed an emergency motion to adjourn the hearing. The trial court denied Taleb's motion. Taleb himself was personally present in the courtroom for the entire evidentiary hearing. When given the opportunity to participate in the hearing, Taleb refused. Taleb interposed no objections to evidence submitted by Turfe Law and offered no evidence on his own behalf. The trial court considered the unchallenged evidence submitted by Turfe Law in support of its claim for attorney fees and costs. Turfe Law conceded that it did not have a contingency agreement signed by Taleb and requested an award in quantum meruit. The trial court considered the services performed by Turfe Law and calculated that the value of Turfe Law's services on behalf of Taleb. It ruled that Turfe Law had a valid attorney lien equaling $187,500 in attorney fees and $9,465.20 in costs on the basis of quantum meruit.

## II. STANDARD OF REVIEW

We review for an abuse of discretion the trial court's decision to impose an attorney charging lien. *Reynolds v Polen*, 222 Mich App 20, 24; 564 NW2d 467 (1997). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v*

---

[2] See *Kay Bee Kay Holding Co, LLC v PNC Bank, NA*, unpublished order of the Court of Appeals, entered November 12, 2015 (Docket Nos. 327056 and 327077)

[3] See *Kay Bee Kay Holding Co, LLC v PNC Bank, NA*, unpublished order of the Court of Appeals, entered January 29, 2016 (Docket Nos. 327056 and 327077)

[4] *Kay Bee Kay Holding Co, LLC v PNC Bank, NA*, unpublished per curiam opinion of the Court of Appeals, issued November 8, 2016 (Docket No. 327077).

*Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "Whether a lien is authorized in a particular case is a question of law," which we review de novo. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 281; 761 NW2d 761 (2008).

## III. ANALYSIS

## A. CLAIMS OF ERROR RESPECTING TURFE LAW

Taleb argues that the trial court abused its discretion by awarding Turfe Law's request for an attorney charging lien. We disagree.

Taleb first argues that Turfe Law lacked entitlement to an attorney lien for fees and costs because it withdrew as his counsel. Taleb also contends that Turfe Law forfeited any right to an attorney lien because of its alleged misconduct. These arguments lack merit.

An attorney charging lien is " 'an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit.' " *Souden v Souden*, 303 Mich App 406, 411; 844 NW2d 151 (2013) (citation omitted). A charging lien is a common-law right and not provided by statute. *Id*. "The charging lien 'creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services.' " *Id*. (citation omitted). "The ability to enforce an attorney's charging lien is ancillary to a trial court's exercise of jurisdiction over the cases before it." *Id*. at 412. This Court has explained that

> [t]he [attorney's charging] lien exists as part of the court's inherent power to oversee the relationship of attorneys, as officers of the court, with their clients. It does provide a means of securing the legitimate interest of the attorney in payment for his services and expenses on behalf of the client, but it is subject to the control of the court for the protection of the client and third parties as well .... [*Id*. at 411 (citation omitted; alteration in original).]

In this case, the record reflects that, although Taleb argued to the trial court that Turfe Law lacked entitlement to an attorney charging lien, Taleb admitted in his submissions to the trial court and on the record that Turfe Law in fact performed work on his behalf that entitled it to payment. Indeed, in several instances, Taleb stipulated that Turfe Law performed work in the case and was owed money for the reasonable value of that work. Turfe Law conceded that it lacked a contingency fee agreement or other agreement regarding payment of its fees. Turfe Law, however, presented evidence at the evidentiary hearing that established that it performed substantial work and achieved successful results on behalf of Taleb. Turfe Law, therefore, had a right to assert a lien for the work it performed. The trial court appropriately determined the amount of fees and costs to which Turfe Law had entitlement under quantum meruit.

Taleb argues that Turfe Law failed to take the appropriate steps to preserve its lien before withdrawing from the case. The record, however, establishes that Turfe Law moved the trial court to withdraw from the case because of the breakdown of its relationship with Taleb. The record also indicates that, shortly after Turfe Law achieved a successful result for Taleb at the 6-day arbitration proceeding, Taleb ordered Turfe Law to cease working on the file and began disputing paying Turfe Law for its work. The record does not support Taleb's contention that Turfe Law withdrew from its representation for no reason. To the contrary, there was abundant and persuasive

-4-

evidence of record that supported the reasonableness and propriety of the decision of Turfe Law to seek to end their involvement in the case, following their successful representation of Taleb throughout the arbitration process.

Michigan law permits an attorney to obtain an attorney charging lien on a theory of quantum meruit where the client either wrongfully discharged the attorney *or* the attorney rightfully withdrew. *Reynolds*, 222 Mich App at 24. In this case, Turfe Law rightfully withdrew from its representation of Taleb because the record reflects an obvious and material breakdown in the attorney-client relationship. As to Taleb's argument that Turfe Law committed misconduct by attempting to assert a contingency fee agreement without obtaining a written contract, the record actually reveals that Turfe Law abandoned its contingency fee claim when Taleb made it clear that he would not sign a written agreement. At the evidentiary hearing, Turfe Law sought compensation for its services on a theory of quantum meruit. Therefore, Taleb's allegation of misconduct lacks merit.

Taleb also argues the trial court violated the bankruptcy stay and lacked jurisdiction to determine the attorney charging lien matter. This argument lacks merit because the trial court did not violate the bankruptcy stay. Under 11 USC 362(a)(4), a petition for bankruptcy operates as a stay of any action respecting property of the bankruptcy estate. The bankruptcy estate is defined under 11 USC 541 and it pertains only to legal and equitable interests of the *debtor*, in this case Kramer and his companies. Turfe Law's attorney charging lien did not involve or require the trial court to take any action respecting property of the Kramer bankruptcy estate. On the contrary, Turfe Law's attorney charging lien arose related to work it performed for Taleb for which Taleb refused to pay. The trial court's order that imposed the lien specifically indicated that payment of any funds toward the lien were contingent on the bankruptcy court's disbursement of funds from the bankruptcy estate to Taleb. It is axiomatic that the bankruptcy court's disbursement of funds to unsecured creditors like Taleb could not violate the automatic stay. Further, the trial court's later determination of the amount of Turfe Law's lien did not constitute a violation of the stay. It merely served to determine the amount of the lien which would potentially be satisfied in whole or part from funds disbursed to Taleb by the bankruptcy court. In this case, the debtors were Kramer and his companies. The trial court levied Turfe Law's attorney charging lien against Taleb, its former client, who was not a bankruptcy debtor but an unsecured creditor who the bankruptcy court determined had entitlement to proceeds from Kramer and his companies' bankruptcy estate. Consequently, the trial court's grant of the lien was not "against the property of the estate," and therefore, the trial court's action did not implicate the automatic stay under 11 USC 362(a)(4).

Taleb also argues that the trial court lacked jurisdiction because the case was closed and never reopened. "For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014) (quotation marks and citation omitted). Michigan generally follows a raise or waive rule of appellate review. *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008). In this case, Taleb failed to raise this issue before the trial court, and therefore, waived appellate review of it. This Court has the discretion to overlook preservation requirements. See *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (stating that this Court may overlook preservation requirements where the failure to consider the issue would result in a manifest injustice, or if consideration is necessary for a proper determination of the case, or if

the issue involves a question of law and the facts necessary for its resolution have been presented). Nevertheless, we exercise such discretion sparingly and only where exceptional circumstances warrant review, none of which apply here. *Booth v University of Michigan Bd of Regents*, 444 Mich 211, 234 n 23; 507 NW2d 422 (1993).

Moreover, in this case, Turfe Law originally moved for the case to be reopened and its lien to be acknowledged. After the trial court granted that motion, this Court reopened Kramer's appeal once the bankruptcy court lifted the stay. After being informed of the pending appeal, the trial court ordered the case administratively closed pending the appeal. Its order specifically provided that, once the appeal concluded, the attorney fee issue could be addressed without reopening the case. Taleb has failed to present any authority, statutory or otherwise, that barred the trial court from entering that order or later resolving the attorney fee issue. The two cases cited by Taleb are inapposite and he offers no explanation for their general citation. Taleb has also failed to establish how the trial court lacked jurisdiction to determine the issue. "Generally, where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) (quotation marks and citation omitted).

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. [*Id.* (citation omitted).]

Taleb, therefore, has abandoned this issue. Further, circuit courts clearly have subject-matter jurisdiction over such issues. Specifically, this Court has held that "[t]he [attorney's charging] lien exists as part of the court's inherent power to oversee the relationship of attorneys, as officers of the court, with their clients." *Souden*, 303 Mich App at 411 (citation omitted; alterations in original). Accordingly, we find no merit to Taleb's argument.

For the first time in his reply brief on appeal, Taleb contends that reversal is warranted because Turfe Law allegedly failed to submit a billing statement in support of its claim for an attorney charging lien and that Turfe Law was required to move the trial court for permission to withdraw from the case but failed to do so. Initially, we need not consider these arguments because Taleb cannot raise new issues in his reply brief. *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003) ("[R]aising an issue for the first time in a reply brief is not sufficient to present the issue for appeal."). Even so, these new arguments lack merit. The record reflects that Turfe Law presented a detailed estimated invoice and testimony that supported its claim for a charging lien award in quantum meruit at the evidentiary hearing. Turfe Law presented uncontroverted evidence regarding the hours it worked on the case and the legal work performed on behalf of Taleb. Further, the record reflects that Turfe Law moved for permission to withdraw as Taleb's attorney. Even if Taleb could raise these issues for the first time on appeal, he cannot carry his "burden of furnishing the reviewing court with a record that verifies the basis of any argument on which reversal or other claim for appellate relief is predicated." *Petraszewsky v Keeth*, 201 Mich App 535, 540; 506 NW2d 890 (1993).

-6-

## B. CLAIMS OF ERROR REGARDING MILLER CANFIELD

Taleb offers a convoluted argument in an effort to support his claim that the trial court erred by granting Miller Canfield relief. "Generally, an issue is not properly preserved if it is not raised before, addressed, or decided by the circuit court or administrative tribunal." *Marik v Marik*, 325 Mich App 353, 358; 925 NW2d 885 (2018) (quotation marks and citation omitted). "Michigan generally follows the 'raise or waive' rule of appellate review." *Walters*, 481 Mich at 387 (citation omitted). During the trial court proceedings, Taleb never challenged Miller Canfield's entitlement to being paid attorney fees and costs. The record reflects that Miller Canfield never requested or received entry of an order respecting an attorney charging lien in this case. Instead, Miller Canfield only sought to ensure that its lien asserted in the bankruptcy proceedings would be paid first from the proceeds disbursed by the bankruptcy court to Taleb before Turfe Law or Taleb received their respective shares. The trial court never considered or determined Miller Canfield's entitlement to a lien or the amount of an attorney charging lien if so entitled.

Moreover, Taleb's arguments regarding Miller Canfield also lack merit because his appeal of matters pertaining to Miller Canfield amounts to an impermissible collateral attack on the attorney charging lien asserted in the Kramer bankruptcy proceedings. "It is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding[.]" *Workers' Compensation Agency Dir v MacDonald's Indus Prod, Inc (On Reconsideration)*, 305 Mich App 460, 474; 853 NW2d 467 (2014). In this case, the trial court never entered an attorney charging lien in favor of Miller Canfield nor calculated its attorney fees and costs related to its representation of Taleb. The trial court, however, acknowledged Miller Canfield's entitlement to payment from the proceeds recovered in the Kramer bankruptcy case, and therefore, in its April 7, 2017 order, appropriately provided for Miller Canfield's priority interest in such proceeds. Miller Canfield filed its notice of attorney lien in the bankruptcy court and specified the amount it considered due from Taleb for the services it performed for him. Consequently, if Taleb wished to challenge that lien, he needed to do it in the bankruptcy court, or on direct appeal from any decision by that court in the bankruptcy proceedings.

Appellees, having prevailed on all issues in this matter, may assess costs against Appellant pursuant to MCR 7.219.

Affirmed.

/s/ James Robert Redford
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien